UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMIEN JOHNSON,

|  |  |  |
|---|---|---|
| | Petitioner, | Case No. 2:11-cv-15108 |
| v. | | Honorable Patrick J. Duggan |

SHERRY BURT,

Respondent.

_____/


## OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Michigan prisoner Damien Johnson ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of carjacking, in violation of Michigan Compiled Laws § 750.529a, and armed robbery, in violation of Michigan Compiled Laws, following a jury trial in the Genesee County Circuit Court. He was sentenced, as a fourth habitual offender, Michigan Compiled Laws § 769.12, to concurrent terms of twenty-five to fifty years imprisonment on those convictions in 2009. In his pleadings, as amended, he raises claims of ineffective assistance of trial counsel, prosecutorial misconduct, double jeopardy, and improper bind-over prior to trial. For the reasons stated, the Court denies the habeas petition. The Court also

declines to issue a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## I.   Facts and Procedural History

Petitioner's convictions arise from his armed robbery and carjacking of a woman on July 29, 2008 in Flint, Michigan.  The Michigan Court of Appeals set forth the following facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010) (noting that this presumption applies to factual findings made by state appellate courts on the basis of their review of the trial court's records) (citation omitted).

> Sara Reazor testified at trial that at 4:00 a.m. on July 29, 2008, following her shift at Washington Inventory Service in Flint, she drove her 1998 Pontiac Montana van to her former boyfriend's home to check on his cats. She parked her vehicle in the driveway, leaving it running with the car door open. Discovering the house was locked, she returned to the vehicle, and noticed defendant coming towards her, hunched over, with his arm behind his back.

> She ran to the passenger's side to get in and quickly lock the door, however, defendant got into the vehicle on the driver's side at the same time. He pointed a gun at Reazor's head and then struck her with it. Defendant then pushed her out of the van and drove off. Reazor's purse, a change container, and other personal belongings were in the van.

> Shortly thereafter, dispatched officers observed a van matching the description of the stolen vehicle parked in the driveway near the location of the carjacking. As the cruiser's spotlight shone on the vehicle, the driver door opened and the occupant ran away. Officers pursued the occupant on foot into the woods. Within minutes, they found defendant kneeling down at the edge of the woods. A BB gun was found three feet

2

away.

Reazor's statement to the police immediately after the incident varied somewhat from what she testified to at trial. Reazor told officers that she had been driving slowly past her ex-boyfriend's house with her window rolled down when a man ran up to the window and placed a gun to her head. She stated that the man pulled her out of the car on the driver's side and hit her with the gun.

Reazor was unable to positively identify defendant in a line-up conducted in the jail several hours after the incident. However, she positively identified defendant as the carjacker at his Preliminary Examination on August 15, 2008.

*People v. Johnson*, No. 290461, 2010 WL 1979471, at *1 (Mich. Ct. App. May 18, 2010) (unpublished) (per curiam).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that trial counsel was ineffective and that the prosecutor committed misconduct during closing arguments. The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions. *Id.* Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Johnson*, 488 Mich. 872, 788 N.W.2d 447 (2010).

Petitioner dated his initial federal habeas petition on October 27, 2011, raising the same ineffective assistance of counsel and prosecutorial misconduct claims misconduct that he raised on direct appeal of his convictions. While the case was

pending, he moved to stay the proceedings so that he could return to the state courts to exhaust additional issues. The Court granted Petitioner's motion, stayed the proceedings, and administratively closed the case.

Petitioner then filed a motion for relief from judgment with the state trial court asserting that appellate counsel was ineffective, that the prosecution presented insufficient evidence to support his convictions, that his convictions for both armed robbery and carjacking violated double jeopardy, and that the state district court abused its discretion in binding him over for trial. The trial court denied the motion, finding that the claims lacked merit. *People v. Johnson*, No. 08-23378-FC (Genesee Co. Cir. Ct. June 22, 2012) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was dismissed "for failure to pursue the case in conformity with the rules. MCR 7.201(B)(3) and 7.216(A)(10)." *People v. Johnson*, No. 313520 (Mich. Ct. App. March 19, 2013) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Johnson*, 495 Mich. 900, 839 N.W.2d 457 (2013).

Petitioner thereafter returned to federal court on an amended petition and this case was reopened. In his pleadings, he raises the following claims:

I.    [He] was denied a fair trial and his constitutional right to effective
      assistance of counsel by his attorney's failure to request the

4

appointment of an expert on eyewitness identification and by
failing to object to a tainted in court witness identification of her
client.

II.     [He] was denied his right to due process and a fair trial as a result
of the prosecutor's misconduct where the prosecutor improperly
attempted to evoke and emotional response from the jurors by
appealing to their sympathy for the complainant and by appealing
to the civic duty of the jurors.

III.    [He] claims double jeopardy when he was charged with carjacking
and armed robbery for the same incident.

IV.     The state district court magistrate abused his discretion in binding
over [Petitioner] with insufficient evidence of the charges.[1]

Respondent has filed an answer to the petition contending that it should be denied.

Petitioner has filed a reply to that answer.

## II.   Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214.  In order to

grant relief, this Court must conclude that the state court's decision "with respect to

any claim that was adjudicated on the merits in State court proceedings" was (1)

"contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States[]" or (2) "based on an

---

[1]Petitioner's motion to reopen this case was unclear as to the specific claims
raised in his amended habeas petition.  In his reply to Respondent's answer,
however, he cites these four issues.

5

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has expounded upon the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1). *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (O'Connor, J., opinion of the Court for Part II) ("[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519).

Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted). A federal court

may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous. [Rather, t]he state court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

Factual determinations made by state court judges in the adjudication of claims cognizable on habeas review are accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.* Moreover, habeas review of claims adjudicated on the merits is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011).

As the authority cited above makes clear, AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions

7

be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (citing cases); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007).

### III.   Discussion

#### A.   Procedural Default

Respondent contends that one or more of Petitioner's claims are barred by the doctrine of procedural default.  It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997)). The Supreme Court has explained the rationale behind such a policy:   "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523.  In this case, judicial economy counsels in favor of addressing the substantive issues, as the claims are easily disposed of and would not offend notions of comity. Accordingly, the Court shall proceed to the merits of Petitioner's claims.

#### B.   Ineffective Assistance of Counsel Claim

Petitioner first asserts that he is entitled to habeas relief because trial counsel

was ineffective for failing to object to the victim's identification of him as the perpetrator of the crime and, relatedly, for failing to request an expert on witness identification.

In order to establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S. Ct. at 2066. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689, 104 S. Ct. at 2065. As to the issue of prejudice, counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. A petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 102 S. Ct. at 2068. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

The Supreme Court has confirmed that a federal court's consideration of

ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals denied relief on this claim stating:

> To prevail on a claim of ineffective assistance of counsel, defendant must show: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) the resultant proceedings were fundamentally unfair or unreliable. *People v. Mesik (On Reconsideration)*, 285 Mich App 535, 542-543; 775 NW2d 857 (2009). A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. *People v. Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).
>
> The decision to call an expert witness is a matter of trial strategy. *People v. Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). The failure to call a witness at trial constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *People v. Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that might have made a difference in the outcome of the trial. *People v. Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).
>
> In the instant case, defendant was not deprived of a substantial defense

10

as a result of defense counsel's actions. Defense counsel utilized a strategy of attacking Reazor's truthfulness, her inability to accurately recall the events of the evening of the carjacking, and inability to identify defendant shortly after the incident in order to create reasonable doubt. Defense counsel's closing argument was replete with references to Reazor's differing accounts of the incident immediately after the carjacking and on the witness stand. Counsel also went into significant detail regarding her failure to identify defendant in the line-up. Counsel fully presented a defense based on the unreliability of Reazor's identification of defendant. While this strategy was ultimately not successful, it did not fall below an objective standard of reasonableness.

Furthermore, the issue of whether Reazor's memory would be more accurate shortly after the event or weeks later is one that a jury could decide for itself even without expert testimony. *See People v. Smith*, 425 Mich 98, 106; 387 NW2d 814 (1986) (suggesting expert testimony is unnecessary where layperson would be qualified to determine the issue without enlightenment from one having specialized understanding). Even if an expert had been called to state that Reazor's identification, made weeks after the event, was less reliable than one made immediately after the event, it is unlikely that such testimony would add to the jury's knowledge or affect the outcome of the trial. Accordingly, defense counsel's performance was not deficient and defendant is not entitled to reversal of his convictions on this basis.

*Johnson*, No. 290461, 2010 WL 1979471 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Indeed, counsel may have reasonably determined that moving to suppress the victim's identification would have been futile. In *Perry v. New Hampshire*, _ U.S. _, 132 S. Ct. 716 (2012), the Supreme Court held that the Due Process Clause does not require preliminary judicial inquiry into the reliability of an eyewitness identification unless the identification was procured under

unnecessarily suggestive circumstances arranged by law enforcement officers. Although the Supreme Court has recognized that "all in-court identifications" "involve some element of suggestion[,]" it has also determined that unless police misconduct is present, such identifications do not require a pre-trial determination of admissibility. *Id.* at 727. Rather, in the absence of official police misconduct, challenges to the reliability of eyewitness identification are matters for the jury to determine based up on the evidence. The Court explained:

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id.* at 721.

Here, Petitioner has failed to demonstrate that the identification at issue resulted from unnecessarily suggestive circumstances arranged by law enforcement. The victim's identification of Petitioner was based upon her recollection of the incident and her observations of Petitioner in court; the fact that the victim saw Petitioner at the preliminary examination and again at trial does not mean that her identification was tainted. Consequently, under *Perry*, the question of the reliability of the in-court identification was for the jury to decide. Counsel cannot be deemed deficient for

making a meritless or futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Further, counsel may have reasonably determined that the defense case was better served by challenging the victim's in-court identification of Petitioner given the victim's inability to identify him at the pre-trial line-up and given the inconsistencies between her statements. To be sure, the record reveals that counsel extensively cross-examined the victim about her identification of Petitioner and her recollection of events. This was a reasonable trial strategy under the circumstances of this case. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

In addition, counsel may have reasonably determined that seeking an expert on witness identification was unnecessary. The Constitution does not require defense counsel to pursue every possible trial strategy. *Engle v. Isaac*, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982). "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins*

*v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making such strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 1037 (2000). The failure to present evidence or call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). In this case, counsel extensively cross-examined the victim about her version of events, including her initial failure to identify Petitioner and her subsequent identification of him. Such strategy was reasonable – and counsel's strategic decision is "due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407. Counsel's decision not to seek an expert on witness identification did not deprive Petitioner of a substantial defense.

Lastly, Petitioner fails to establish that he was prejudiced by counsel's conduct. With regard to the victim's identification, he fails to show that a suppression motion would have been successful. While a victim's identification of a defendant is ordinarily crucial to a criminal prosecution, such was not the case here, as the record presented at trial contained ample evidence of Petitioner's guilt. As discussed by the Michigan Court of Appeals, the police observed someone flee the victim's stolen

vehicle in the area of the carjacking, pursued the person on foot into the woods, and discovered Petitioner hiding in the woods within a few feet of a BB gun.  Given such circumstances, Petitioner fails to show that he was prejudiced by counsel's conduct in this regard.

Petitioner also fails to establish that he was prejudiced by counsel's conduct in not seeking an identification expert.  *See, e.g.*, *Forensic v. Birkett*, 501 F.3d 469, 483-84 (6th Cir. 2007) (citing *Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004), and denying relief on similar claim).  While Petitioner asserts that eyewitness testimony is inherently unreliable, he fails to offer expert testimony in support of his claim or otherwise demonstrate that expert testimony would have made a difference at trial.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).  Petitioner fails to demonstrate that trial counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on this claim.

**C.      Prosecutorial Misconduct Claim**

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by appealing to the jurors' sympathy for the victim, by vouching for the victim, and by invoking the jurors' passions and sense of civic duty during closing arguments.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1874 (1974); *Parker v. Matthews*, _ U.S. _, _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly* is the proper standard).

The Michigan Court of Appeals denied relief on this claim on direct appeal. The court explained:

> The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v. Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused. *Id*. at 63-64. The alleged improper statements must be considered on a case-by-case basis, examining the record and the remarks in context, and in light of defendant's arguments. *People v. Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

16

Furthermore, curative instructions "are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *People v. Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Defendant argues that the prosecutor improperly appealed to the jurors' sympathy for Reazor by telling the jury that he "spoke for" Reazor and that her testimony should be believed because to do so would be consistent with justice. Appeals to the jury to sympathize with the victim can constitute improper argument. *People v. Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). A prosecutor may, however, argue that a witness is credible or worthy of belief. *People v. Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

Here, the challenged remark that "Sara is worth believing and justice is worth believing" was made during closing arguments and in rebuttal to defense counsel's repeated references to Reazor being a liar. Even an otherwise improper remark may not rise to error requiring reversal when the prosecutor is merely responding to defense counsel's argument. *People v. Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). Furthermore, the remark was isolated. Isolated remarks and appeals that are not blatant will not rise to the level of prosecutorial misconduct. *Watson*, 245 Mich App at 591. In this context, the remark was not improper.

Defendant next argues that the prosecutor improperly appealed to the jurors' civic duty by stating:

> I ask you this in the name of Sara Reazor. I ask you this in the name of the police department and in the name of the Genesee County prosecutor's office and in the name of the People of the State of Michigan, but most importantly, most importantly, here because justice demands a verdict of guilty.

A prosecutor may not tell the jury that it should convict as part of its "civic duty." *People v. Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). In *People v. Truong*, 218 Mich App 325, 340; 553 NW2d 692 (1996), a panel of this Court found that a prosecutor's comment that "on

17

behalf of the Wyoming Police Department and on behalf of the State of Michigan, I am asking you to convict," was not a "civic duty" argument because it neither injected issues broader than the defendant's guilt or innocence of the charges nor encouraged the jurors to suspend their powers of judgment. The prosecutor's statements in this case are very similar to those in *Truong*, and cannot, therefore, be considered improper civic duty arguments.

The prosecutor's exhortation for the jury to convict "because justice demands a verdict of guilty" was also not improper. In *People v. Perry*, 172 Mich App 609, 617; 432 NW2d 377 (1988), the prosecutor stated in closing argument:

> I'm going to ask you for one thing, though. I'm going to ask you for justice. I think justice is deserved in this case. I think the [using the victim's name] of this world demand consideration, demand justice. I think the victims of this world like [using the victim's name] demand fair consideration.

Although reversal was ostensibly based on other factors, the Court nonetheless cautioned the prosecutor to "refrain from making the improper remarks" on remand. *Id*. at 624. Although the prosecutor in this case similarly used "justice" as a reason for the jury to convict defendant, the gravamen of his closing argument was that the evidence of defendant's guilt was overwhelming. Accordingly, unlike in *Perry*, the remarks did not go so far as to invite the jurors to suspend their powers of judgment and convict simply out of a sense of civic duty.

Finally, defendant points to the prosecutor's statement at the end of his closing argument:

> Now, this is the City of Flint. Okay. Most reasonable People would infer that there is crime in Flint. In fact that there's violent crime in Flint. This kind of crime.

Of all the alleged errors cited by defendant, this remark comes closest to injecting issues beyond defendant's guilt or innocence. In *People v.*

18

*Williams*, 65 Mich App 753, 756; 238 NW2d 186 (1975), a panel of this Court reversed a conviction after the prosecutor had argued to the jury that it could affect the drug traffic in the city of Detroit by finding the defendant guilty. The Court stated:

We recognize, too, that jurors share the average citizen's desire to eliminate the narcotics traffic. In such an emotion-laden situation, sensibilities are easily inflamed. Because emotional reaction to social problems should play no role in the evaluation of an individual's guilt or innocence, prosecutors must exercise special care to avoid arousing jurors' emotions concerning such issues.

In the instant case, by arguing that the jurors had an 'opportunity to effect [sic] the drug traffic in this city', the prosecutor appealed to the jurors' fears and encouraged them to go outside the evidence and decide the case on the basis of their desire to alleviate the drug problem.

In this case, the prosecutor's reference to "violent crime in Flint. This kind of crime," arguably encouraged the jurors to go outside the evidence and decide the case on the basis of fear of the overall crime problem in Flint. Moreover, this comment was not made in response to any argument by defense counsel regarding crime in the city of Flint.

Nonetheless, reversal in such cases is only warranted when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v. Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). The prosecutor in this case presented substantial evidence of defendant's guilt and focused almost exclusively on that evidence in making his closing remarks. The error, therefore, if any, cannot be said to have resulted in the conviction of an actually innocent person or to have compromised the integrity of the judicial process. Furthermore, the court's curative instruction that "lawyers' statements and arguments are not evidence," was sufficient to cure any prejudicial effect of the statement. Accordingly, no reversal is warranted on the basis of prosecutorial misconduct.

*Johnson*, No. 290461, 2010 WL 1979471, at *3-4.

19

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). A prosecutor improperly invokes the passions and prejudices of the jury when he or she "calls on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). It is also well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility. *United States v. Young*, 470 U.S. 1, 9-10, 105 S. Ct. 1038, 1043 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *Young*, 470 U.S. at 18-19, 105 S. Ct. at 1048; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases).

The prosecutor in this case did not improperly appeal to jurors' sympathies for the victim or vouch for her credibility. Rather, the prosecutor argued that the victim

should be believed based upon her testimony and the other evidence presented at trial. It is well-established that a prosecutor may argue reasonable inferences from the evidence, *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief, *Portuondo v. Agard*, 529 U.S. 61, 69, 120 S. Ct. 1119, 1125 (2000). The prosecutor did not imply personal knowledge or undisclosed evidence of guilt. Moreover, several of the prosecutor's comments were made in response to defense counsel's attacks of the victim's credibility. Petitioner fails to show that the prosecutor's comments relative to the victim were improper or that they deprived him of a fundamentally fair trial.

The prosecutor's remarks about crime in the City of Flint, however, were arguably improper because they appealed to the juror's fears about crime and their sense of civic duty as to such matters. Nonetheless, to the extent that those remarks were improper, they were not so flagrant or pervasive as to render the trial fundamentally unfair. This is particularly true where, as here, the prosecution presented significant evidence of Petitioner's guilt at trial.

Furthermore, any potential prejudice to Petitioner was mitigated by the fact that the trial court instructed the jurors about the elements of the crimes and the burden of proof, directed them not to let sympathy or prejudice influence their decision, and explained that the attorneys' questions and arguments are not evidence. Jurors are

presumed to follow the trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799, 121 S. Ct. 1910, 1922 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987)); *United States v. Powell*, 469 U.S. 57, 66, 105 S. Ct. 471, 477 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

**D.    Double Jeopardy Claim**

Petitioner also asserts that he is entitled to habeas relief because his convictions for both armed robbery and carjacking violate the prohibition against double jeopardy.  The state trial court denied relief on this claim on collateral review, finding that Petitioner was convicted of carjacking for stealing the victim's vehicle and was convicted of armed robbery for stealing her purse and other belongings such that "there is no double jeopardy issue."  *Johnson*, No. 08-23378-FC at p. 2.  The Michigan Court of Appeals dismissed his appeal on procedural grounds and the Michigan Supreme Court denied leave to appeal.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice

put in jeopardy of life or limb." U.S. Const amend. V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229, 114 S. Ct. 783, 789 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339, 95 S. Ct. 1013, 1020 (1975)).

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S. Ct. 2536, 2541 (1984) (citing cases). Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a

legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69, 103 S. Ct. 673, 679 (1983).  In determining whether a state legislature intended to authorize separate, cumulative punishments under the circumstances presented, a federal court must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments.  *Hunter*, 459 U.S. at 368, 103 S. Ct. at 679; *Banner v. Davis*, 886 F.2d 777, 779-80 (6th Cir. 1989).

Petitioner's double jeopardy claim fails for two reasons.  First, the Michigan courts have ruled that the state legislature has authorized separate punishments for both carjacking and armed robbery and that those offenses each contain an element that the other does not such that convictions for both offenses arising from the same transaction do not violate double jeopardy.  *See, e.g, People v. Henderson*, No. 250156, 2005 WL 321004, *2 (Mich. Ct. App. Feb. 10, 2005) (per curiam); *People v. Parker*, 230 Mich. App. 337, 342-45, 584 N.W.2d 336, 339-40 (1998); *see also Grayer v. McKee*, 149 F. App'x 435, 442-43 (6th Cir 2005) (affirming denial of habeas relief on similar double jeopardy claim).  Second, and more pertinent here, Petitioner's carjacking conviction arose from his theft of the victim's car and his armed robbery

24

conviction arose from his theft of the victim's other personal belongings.  Under such circumstances, no double jeopardy violation occurred.  *See, e.g., Parker v. Withrow*, No. 00-10164-BC, 2002 WL 31749155, *5-7  (E.D. Mich. Nov. 12, 2002); *United States v. Kuhn*, 165 F. Supp. 2d 639, 646-47 (E.D. Mich. 2001).  Habeas relief is not warranted on this claim.

## E.    Bind-Over Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the state district court abused its discretion in binding him over for trial.  The state trial court denied relief on this claim on collateral review, finding that there was probable cause to bind Petitioner over for trial given the jury's determination that he was guilty beyond a reasonable doubt.[2] *Johnson*, No. 08-23378-FC at p. 2.  The Michigan Court of Appeals dismissed his appeal on procedural grounds and the Michigan Supreme Court denied leave to appeal.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  As an initial matter, the Supreme Court has long adhered to the principle that an "illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 865

---

[2]Although the state trial court's analysis of this issue was brief, it appears that the judge relied on the mootness doctrine to dispose of this issue.  In other words, once a guilty verdict was returned, the existence of probable cause to justify a restraint on Petitioner's liberty was no longer relevant.

(1975) (citations omitted) ("[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."). This rule of law precludes habeas relief on Petitioner's claim.

Further, and to the extent that the state trial court relied on a finding of guilt to extinguish any claim related to the pretrial detention decision, such a determination was based on the State of Michigan's law concerning preliminary examinations. Thus, the bind-over decision constitutes a state law issue which does not implicate a federal constitutional right and is not subject to review in a federal habeas proceeding. *See Schacks v. Tessmer*, 9 F. App'x 344, 351 (6th Cir. 2001) (refusing to review state court determination that second-degree murder conviction rendered bind-over sufficiency of the evidence challenge moot); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on state prisoner's claim that there was insufficient evidence to bind him over for trial); *see also Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991) (ruling that habeas relief is not available for perceived violations of state law). For this additional reason, habeas relief is not warranted on this claim.

### IV.   Certificate of Appealability

Petitioner may not appeal the Court's denial of his habeas petition unless a

26

district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000)). Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Having conducted the requisite inquiry, the Court concludes that reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. For this reason, the Court also concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as an appeal cannot be taken in good faith. Fed. R. App. P. 24(a).

## V.   Conclusion and Order

For the reasons stated, the Court concludes that Petitioner has failed to demonstrate that he is entitled to the relief he seeks in his petition for writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and a certificate of appealability **SHALL NOT** issue.

Dated:  October 6, 2015

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

**Copies to:**

**Damien Johnson**, #285166
Muskegon Correctional Facility
2400 S. Sheridan
Muskegon, MI 49442

**David H. Goodkin, AAG**

**Linus R. Banghart-Linn, AAG**